# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **MORRIS C. LARD** <br> La. DOC #095296 <br> VS. <br><br> **STEVE HOYLE REHABILITATION** <br> **CENTER, ET AL.** | **CIVIL ACTION NO. 08-1012** <br><br> **SECTION P** <br> **JUDGE JAMES** <br><br> **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Morris C. Lard, an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC), proceeding *pro se* and *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 10, 2008. Plaintiff complains that he was exposed to conditions which exacerbated his health problems and then denied appropriate medical care while incarcerated at the Steve Hoyle Rehabilitation Center (SHRC), Tallulah, Louisiana, in August 2007. He also complains of the way he was treated by Captain Lee upon his transfer to the David Wade Corrections Center (DWCC) where he is now incarcerated. He sues SHRC personnel Nurse Williams, Nurse Clark, Dr. "Sing Song," and Sergeant Chase, and DWCC's Captain Lee. He prays for compensatory and punitive damages and has requested the appointment of counsel. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

1

*Statement of the Case*

Prior to August 10, 2007, plaintiff advised the Nurse Williams of the SHRC medical department that diabetes and hypertension prohibited him from prolonged standing or walking. Plaintiff also advised Williams that in years past he had suffered a trauma to his skull resulting in the placement of a plate in the upper left portion of his skull. Williams then assured plaintiff that he would receive a "Level Two" duty status.

Shortly thereafter plaintiff was assigned to the inner yard work detail under the supervision of Sergeant Chase. This work detail required its members to push lawnmowers or hoe grass on the prison yard.

On August 9 -10, 2007, there was a heat advisory which forecast a high of 104 degrees Fahrenheit and a "heat index" of 110 degrees. Working in that heat, plaintiff experienced a rise in his body temperature, shortness of breath, and dizziness. He ceased working and walked 30 yards to where Sergeant Chase was stationed. Plaintiff advised Chase that he needed to use the restroom. Chase refused access to the dorm restroom and instead advised plaintiff to use the restroom located in the recreation area approximately 150 yards away. When he arrived at that location, he was told by other inmates that the officer in charge was not present, and that Sergeant Chase was aware of that fact. They also advised him that there was a closer restroom in the education building approximately 27 yards from the recreation site. Plaintiff advised his fellow inmates that he was dizzy and nauseated. Nevertheless, he apparently traversed the 27 yards to the restroom.

At 3:00 p.m. plaintiff returned to his housing unit and then walked to the infirmary for his daily dose of medicine. Upon arrival at the infirmary, Nurse Fountain noted that plaintiff was

2

short of breath. She administered plaintiff his medication and then told him to leave. Plaintiff then went to the dining hall, but was unable to eat. He returned to his dorm and "collapsed" on a bench near the entrance. A short time later he was awakened by the housing unit sergeant. The sergeant then summoned Captain McCall.

McCall obtained a wheelchair and he and the sergeant accompanied plaintiff to the infirmary. By this time, Nurse Fountain had completed her shift and Ms. Clarke replaced her. Captain McCall advised her that plaintiff was having difficulties and he requested medical attention on plaintiff's behalf. Nurse Clark then conducted a cursory examination. She apparently obtained plaintiff's vital signs, temperature, blood pressure and blood sugar level. At the conclusion of her examination, Nurse Clarke advised plaintiff that she was placing him on the "doctor call out."

On August 11, while still confined to the infirmary, plaintiff complained of pain on the left side of his body and vision problems. However, his complaints were met with a "hostile" attitude by the infirmary staff. Plaintiff was threatened with disciplinary action should he continue to complain.

Plaintiff was examined by Dr. "Sing Song" on August 14. As plaintiff began to explain his various complaints, the doctor told him to stop. According to plaintiff, Dr. "Sing Song" did not properly examine him. As plaintiff began to remove his shoe and explain that he was experiencing numbness in his left foot, he was ordered to stop. The physician then cleared plaintiff to return to work and advised plaintiff to see him again in two weeks.

When Captain McCall discovered that plaintiff had been cleared to return to work, he advised plaintiff to let him know when he arrived for work detail. The following day, plaintiff

arrived at the work site only to discover that Captain McCall was not present. Captain McCall was summoned and upon his arrival he advised the corrections officers that he wanted plaintiff to avoid working in the sun. Sergeant Chase then advised plaintiff that he would be assigned to work in the visiting shed.

Approximately ten days later, plaintiff was again examined by Dr. "Sing Song." Plaintiff again complained of numbness and tingling and Dr. "Sing Song" opined that since plaintiff was diabetic, this symptom might be caused by standing too long. At any rate, Dr. "Sing Song" examined plaintiff's foot and concluded that plaintiff had gangrene. The physician then gave plaintiff "a three or four day duty status" and advised that he would be treated at the E.A. Conway Hospital within a week.

In due course plaintiff was transported to E.A.Conway Hospital where he was examined by a physician. Plaintiff then advised the physician that in his opinion, all of his medical problems were the result of his exposure to heat. The physician apparently disagreed and told plaintiff to stop complaining.

Plaintiff was then returned to SHRC and given "no duty" status for six weeks. By the end of the first week of September plaintiff began to "... experience side effects from the mild stroke which effected [sic] my lower right jaw, my right [temple], my right eye, frontal brain to the top mold [sic] of my head this excruciating pain occurred nine hours out of the day and during that time the pain level was taken from one to ten ..." Nurse Williams advised plaintiff that he was being transferred because of these various medical problems.

In mid-September plaintiff was then transferred from SHRC to the David Wade

Corrections Center (DWCC) where he is presently incarcerated.[1]

On October 4, 2007, plaintiff submitted Administrative Remedies Procedure (ARP) No. DWCC-2007-1166 to prison authorities at DWCC.[2] On October 30, 2007, the prison Unit Head responded as follows: "You have been followed for your complaints since 7-24-07. You have

---

[1] The remainder of plaintiff's complaint contains a series of almost incomprehensible allegations concerning the treatment he has received while incarcerated at DWCC. However, as shown elsewhere, plaintiff named only one defendant at DWCC, Captain Lee. Nevertheless, plaintiff's complaint alleges the following events and circumstances – According to plaintiff, upon his arrival at DWCC he continued to make sick call requests for treatment of head and face pain and numbness in his lower extremities. He claims that a sick call request he tendered on September 24, 2007 was purposefully discarded by Sergeant West at DWCC. On the following day, plaintiff experienced a partial loss of hearing and as a result, was unable to hear the sick call announcement. Eventually, a corrections officer advised him to visit the infirmary. Upon his visit to the infirmary, the nurse questioned him concerning his tardiness. She also pointed out that plaintiff had missed another sick call appointment scheduled on September 18. Plaintiff claimed that he missed that appointment because of vision problems. The nurse proceeded to examine plaintiff and according to plaintiff she used loud and vulgar language. In any event, plaintiff was confined to the infirmary for observation.

On the following day plaintiff took a shower. He experienced head pain and upon his return, Nurse Howell obtained vital signs and blood sugar level. Again, plaintiff maintained that Nurse Howell was "loud and vulgar." Plaintiff demanded to see someone in authority and Captain Lee was summoned. Lee threatened plaintiff with disciplinary action and physical harm should plaintiff continue to complain. Eventually, plaintiff was placed back in an examination room for the rest of the evening. On the following morning he was given medication for pain.

During the first week of October, plaintiff again complained of "... pain in top of head frontal brain pain, right ear, right eye, lower right jaw, pain through right collar bond down through right shoulder, pain and numbness in left foot, toes, ankles, upward through shin bone, numbness and pain upward to knee, pain and numbness front and back knee joint, upward left thigh same pain and numbness off and on in this area of left leg and did, experience some pain in genital area." According to plaintiff, no one paid any attention to his complaints. Plaintiff claims that these symptoms prove that he was suffering from heat exhaustion as a result of the incident that occurred at SHRC in August, 2008.

Plaintiff claims that the "infrastructure" at SHRC and DWCC are guilty of various criminal offenses because of the treatment he received while incarcerated. He further complains that as a handicapped person he has been denied "... easy access shopping in this compound canteen..." He claims that DWCC discriminated against persons in wheelchairs and on crutches by promulgating a rule which permits able bodied inmates to enter the commissary before them. Plaintiff then complained that as a result of his disability, he would not be able to stand in line for long periods of time. He was advised to get a duty status notice from the DWCC physician.

On December 27, 2007, while waiting in line to enter the commissary, plaintiff was told by the corrections officer that he would have to wait like everyone else; the officer suggested to plaintiff that he sit when tired and then move as the line moved.

[2] Plaintiff did not provide a copy of his grievance.

5

significant hypertension and are an insulin dependent diabetic. You are being followed in chronic clinic and by the physicians to monitor your blood pressure and blood sugar levels. You were referred to vascular surgery clinic regarding the dry gangrene in your left great toe. You will be sent as appointed by LSU. You were seen by the eye doctor on 11-7-07. Glasses have been ordered for you but according to the eye doctor will correct your vision to only 20/60 because of previous nerve damage. It is important that you continue to comply with medication ordered for your blood pressure. Lab tests are scheduled routinely to monitor your hemoglobin and other blood values. The doctors will determine the best plan of care for you and will refer you for specialty care as necessary." Plaintiff rejected the response on October 31, 2007, stating, "Due to my original complaint have not been addressed. Since the exposure to the sun is what have been causing my problems." [rec. doc. 1-3, p. 1]

His appeal was forwarded to the LDOC Secretary for further review on November 1, 2007. [rec. doc. 1-3, p. 3] On December 21, 2007, the Second Step Response denied relief finding, "It has been determined, after a thorough review of all pertinent documentation, that your request has been satisfied. The medical staff has addressed your concerns in an appropriate manner and in accordance with Health Care Policy #B-06-001. Medical opinion is controlling. The care you have received as well as the care you will continue to receive from the medical staff is determined adequate for your health care concerns. As such, this office has accepted staff's position in this matter and concurs with the response provided at the First Level." [rec. doc. 1-3, p. 4]

Plaintiff signed his complaint on July 7, 2008.

*Law and Analysis*

*1. Appointment of Counsel [rec. doc. 2]*

Plaintiff seeks court-appointed counsel to assist him in the prosecution of a civil rights complaint which centers on his claim that he was exposed to conditions which exacerbated his medical condition and then denied appropriate medical care while incarcerated at the SHRC in August - September 2008. As shown above, he also complains that Captain Lee threatened him with physical harm and disciplinary action. Initially, the undersigned notes that plaintiff is proceeding in *forma pauperis*. A review of the application to proceed *in forma pauperis* establishes that he should be considered indigent for the purposes of this evaluation.

Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under 42 U.S.C. §1983. "Generally no right to counsel exists in §1983 actions [but] appointment of counsel should be made as authorized by 28 U.S.C. §1915 where 'exceptional circumstances' are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985). Pursuant to 28 U.S.C. §1915(e)(1), federal courts are given the power to request that an attorney represent an indigent plaintiff. In the case of *Mallard v. United States District Court for the Southern District*, 490 U.S. 296, 301-302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989) the United States Supreme Court held that federal courts can only request that an attorney represent a person unable to employ counsel because federal courts are not empowered under 28 U.S.C. §1915(e)(1) to make compulsory appointments.

Although courts can request that an attorney represent an indigent plaintiff, the court is not required to make this request in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982) and *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th

Cir. 1989). No precise definition of "exceptional circumstances" is available, but the United States Courts of Appeal have provided a litany of factors for lower courts to consider in determining whether the plaintiff is entitled to have the court request that counsel assist him in his suit. It is proper for the court to consider the following factors: the type and complexity of the case; the plaintiff's ability to adequately present and investigate his case; the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and cross-examination; and the likelihood that appointment will benefit the petitioner, the court, and the defendants by "shortening the trial and assisting in just determination." See *Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992), citing *Murphy v. Kellar*, 950 F.2d. at 293, n.14; *see also Ulmer*, 691 F.2d. at 213, and *Jackson*, 864 F.2d. at 1242. Additionally, a court may consider whether a plaintiff has demonstrated the inability to secure private counsel on his own behalf. *See Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213. Plaintiff is not excused from trying to procure counsel for himself.

Plaintiff has managed to file his original complaint setting forth his cause of action against the named defendants; he has also provided pertinent exhibits in support of his claims. No special legal knowledge is required of plaintiff herein. Additionally, plaintiff has first hand knowledge of the facts which form the basis of this action. The claim is not necessarily atypical of those often asserted in civil rights litigation and is not complex. Further, as is shown hereinafter, all of plaintiff's allegations have been accepted as true. Nevertheless, for the reasons that follow, it has been determined that plaintiff's complaint fails to state a claim for which relief may be granted and is thus subject to dismissal on initial review as provided by 28 U.S.C. §1915 and §1915A. Thus, appointment of counsel at this juncture would serve no useful purpose.

Finally, plaintiff has failed to demonstrate that he has attempted to procure counsel on his behalf.

Accordingly, plaintiff's request for appointment of counsel should be denied as the circumstances presented herein are not "exceptional" so as to warrant the appointment of counsel. Moreover, plaintiff's request should be denied because plaintiff has failed to demonstrate any effort to secure counsel on his own behalf.

## 2. Screening

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116,

9

1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint alleges facts sufficient to conduct and conclude a preliminary screening pursuant to §1915. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that his complaint is frivolous.

*3. Eighth Amendment Claims – Exposure to Dangerous Conditions and Denial of Medical Care*

Plaintiff claims that the defendants exposed him to dangerous conditions which exacerbated his medical condition and then treated his medical condition inappropriately. Such claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the actions of the defendants were sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in this means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Further, the mere fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. The facts – taken as true for the purposes of this Report – establish that Nurse Williams was aware of plaintiff's medical condition (diabetes, hypertension, and prior head trauma) prior to August 10, 2007. Based on these conditions, Williams gave plaintiff a Level Two duty status and assigned him to work in the yard detail supervised by Sergeant Chase. As a result of this assignment, plaintiff was required to cut and trim the grass in the inner prison yard. Plaintiff apparently did not complain about this assignment; nor did he ever suggest to anyone in authority

that his physical condition would prohibit such work. According to plaintiff, he experienced shortness of breath and dizziness while working in the yard on August 10; however, by his own admission, he did not complain of this condition to Sergeant Chase; instead, he asked Chase for permission to use the restroom. While there was apparently some mis-communication with regard to where plaintiff should relieve himself, the facts as alleged merely establish that plaintiff was required to walk a distance of less than 180 yards (540 feet) to accomplish this need. According to plaintiff, he complained of dizziness and shortness of breath to his fellow inmates; however, he does not claim that he complained to prison authorities.

Based upon the facts alleged, plaintiff did not exhibit any symptoms of distress until 3:00 p.m. when he was observed by Nurse Fountain to be "short of breath." According to plaintiff, Fountain administered medication to plaintiff and ordered him to leave. Plaintiff apparently did not complain and went to the dining hall. He then returned to his dormitory and some time later he was discovered "collapsed" on the bench located near the entrance of his dormitory.

By his own admission, the officers who discovered him immediately transported him to the prison infirmary where his vital signs were taken and he was hospitalized in the prison infirmary for further observation. Plaintiff was ultimately examined by a physician on August 14 and cleared to return to work. Nevertheless, prison authorities changed his duty status to permit him to work in the visiting shed rather than on the yard.

Plaintiff has not alleged that any of the SHRC defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that anyone actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur to him.

*Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether or not any of these defendants, or any others, "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The facts alleged herein simply do not support such a conclusion.

### *4. Retaliation at DWCC*

Further, plaintiff complains that sometime after his September arrival at DWCC, he was threatened with harm from Captain Lee. However, plaintiff did not claim that he was ever physically harmed by Lee or anyone else; nor did plaintiff claim that he was subjected to wrongful disciplinary action as a result of his continued medical complaints. Verbal insults and even threats of physical harm do not establish a violation of a prisoner's constitutional rights. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir.2002); see also *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997)("verbal abuse by a prison guard does not give rise to a cause of action under § 1983.") Thus, to the extent that plaintiff complains about the treatment he received from Captain Lee, his complaint is frivolous.

To the extent that plaintiff implies that Lee threatened retaliation should plaintiff continue to complain about his medical condition, his claim fares no better. It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right

13

guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084(1996)).

Plaintiff's implied claim that Captain Lee retaliated or threatened to retaliate because of plaintiff's continued complaints is unsupported by the record. Plaintiff claims that the threats occurred in September, yet plaintiff continued to complain without any retaliatory adverse acts being taken. Clearly Lee's threats did not discourage plaintiff from seeking continued medical treatment; nor did his threats discourage plaintiff from continuing to complain about his medical condition. Thus, he has failed to state a valid retaliation claim. *Morris v. Powell*, 449 F.3d 682, 685-86 (5th Cir.2006), cert. denied --- U.S. ----, 127 S.Ct. 596, 166 L.Ed.2d 443 (2006).

*5. Conclusion*

Considering the foregoing

Plaintiff's Motion to Appoint Counsel [rec. doc. 2] is **DENIED;** and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief might be granted in accordance with the provisions of 28 U.S.C. §1915(e)(2)(B).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana October 1, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE